**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| **SHELLY BLAKLEY,** | ) | **CIVIL ACTION NO. 08-CV-00214** |
| | ) | |
| **Plaintiff,** | ) | **MAGISTRATE JUDGE** |
| | ) | **STEVEN L. CROCKER** |
| **v.** | ) | |
| | ) | |
| **ALSCO METALS CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO PLAINTIFF'S  MOTION FOR SUMMARY JUDGMENT**

---

Keith L. Pryatel, Esq. (0034532)
kpryatel@kwwlaborlaw.com
John W. McKenzie, Esq. (0059266)
jmckenzie@kwwlaborlaw.com
Thomas Evan Green, Esq. (0075022)
tgreen@kwwlaborlaw.com
KASTNER WESTMAN & WILKINS, LLC
3480 West Market Street, Suite 300
Akron, OH 44333
330-867-9998 (Phone)
330-867-3786 (Fax)

Andrew M. Norman, Esq.
anorman@quarles.com
QUARLES & BRADY
33 East Main Street, Suite 900
Madison, WI  53703
608-283-2634 (Phone)
608-294-4974 (Fax)

Counsel for Defendant,
Alsco Metals Corporation

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  LAW AND ARGUMENT ...................................................................... 2

     A.   The Rule 56 Analytical Framework ............................................ 2

     B.   Plaintiff's Release and Severance Agreement is Not Void ......................... 2

     C.   Plaintiff's Multiple and Continued
          Breaches of Her Release and Severance Agreement ............................... 4

          1.   Plaintiff's Wisconsin Retaliation Charge ............................ 5

          2.   Plaintiff's First Amended Complaint ................................. 6

          3.   The Second Amended Complaint ..................................... 8

          4.   Conclusion ......................................................... 9

     D.   Plaintiff's Penalty/Liquidated Damage
          Claim was Effectively Waived and Released ............................... 9

     E.   Plaintiff's Indemnity/Defense Clause
          Is Not a Prohibitive "Penalty" Clause ...................................... 11

     F.   Contested Federal FLSA Overtime Claims are
          Subject to Private Compromise and Settlement ...................................... 14

          1.   Pre-Portal-to-Portal Decisions ..................................... 14

          2.   The 1947 Portal-to-Portal Act ...................................... 16

          3.   The Fair Labor Standards Act of 1949 ............................ 19

          4.   Subsequent Judicial Interpretations ............................. 19

     G.   Contested Wisconsin Overtime Claims are
          Subject to Private Compromise and Settlement ...................................... 22

     H.   Plaintiff's Attack on Defendant's Affirmative Defenses ............................. 25

III. CONCLUSION..................................................................................... 24

     CERTIFICATE OF SERVICE ............................................................... 26

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Alexander v. Buckeye Pipeline Co.* (1978),
  53 Ohio St. 2d 241 ............................................................................ 2

*Astor v. IBM*, 7 F.3d 533 (6th Cir. 1993) .......................................... 2

*Barrentine v. Arkansas-Best Freight Sys.*,
  450 U.S. 728, 101 S.Ct. 1437 (1981) ................................. 24

*Bechtold v. Phys. Health Plan of N. Ind., Inc.*,
  19 F.3d 322 (7th Cir. 1994) ................................................ 2

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697,
  65 S.Ct. 895 (1945) ................................... 14, 16, 17, 19, 20

*Brumbelow v. Quality Mills, Inc.*,
  462 F.2d 1324 (5th Cir. 1972) ........................................... 25

*Butler v. Merrill Lynch Bus. Fin. Srvc.*, 08 C 0834,
  Dkt. #22 F. Supp. 2d ___ (N.D. Ill. Aug. 14, 2008) ........... 22

*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108,
  66 S.Ct. 925 (1946) .................................. 15, 16, 17, 19, 20

*Dorner v. Polsinelli, White, Bardeman & Shalton*,
  656 F. Supp. 1483 (D. Kan. 1994) ................................... 1, 6

*EEOC v. Astra USA, Inc.*, 94 F.3d 738 (1st Cir. 1996) ................... 1

*Faris v. William WPC-I, Inc.*, 332 F.3d 316 (5th Cir. 2003) ........... 22

*Farris Disposal v. Leipply's Gasthaus* (Summit App. 2005),
  2004-Ohio-6737 ............................................................... 12

*Garofalo v. Chicago Title Ins. Co.* (Cuy. App. 1995),
  104 Ohio App. 3d 95 ........................................................ 12

*Gaul v. Olympia Fitness Centers, Inc.* (1993),
  88 Ohio App. 3d 310 ........................................................ 13

*German v. Wisconsin DOT*, 223 Wis. 2d 525, N.W.2d 50,
  656 (Ct. App. 1998), *aff'd.*, 2000 WI 62, 235 Wis.
  2d 576, 612 N.W.2d 50 ..................................................... 23

## <u>TABLE OF AUTHORITIES – CONT'D</u>

<u>Page</u>

### <u>CASES</u>

*Goldfarb v. The Robb Report, Inc.* (1994),
    101 Ohio App. 3d 134................................................................ 13

*Hanna v. Groom* (Franklin App. 2008),
    2008-Ohio-765................................................................ 4

*Ignazio v. Clear Channel Broad. Co.* (2007),
    113 Ohio St. 3d 276................................................................ 3

*Lake Land Empl. Group of Akron, LLC v. Columber*
    (2004), 101 Ohio St. 3d 242 ................................................ 12

*Lloyd v. Brunswick Corp.*, 180 F.3d 893 (7th Cir. 1999) ................................ 21

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982)................................ 20, 21, 22

*Madely v. Radio Shack Corp.*, 2007 W.I. App. 244,
    306 Wis. 2d 312, N.W.2d 559................................ 23

*Manhattan Life Ins. Co. v. Burke* (1903),
    69 Ohio St. 294................................................................ 11

*Martinez v. Bohls Bearing Equipt. Co.*,
    361 F. Supp. 2d 608 (W.D. Tex. 2005) .......................... 3, 14, 17, 18, 19, 20, 21

*Marsh v. Lampert* (Butler App. 1998),
    129 Ohio App. 3d 685................................................ 3

*Moore v. Dayton Power & Light* (1994),
    99 Ohio App. 3d 138................................................ 13

*NBC v. Erskine & Sons, Inc.* (1953),
    158 Ohio St. 450................................................................ 4

*Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995)................................ 25

*Nottingdale Homeowners Assn. v. Darby* (1987),
    33 Ohio St. 3d 32................................................ 13

*Picklesimer v. B&O Railroad* (1949), 151 Ohio St. 1 ................................ 11

## <u>TABLE OF AUTHORITIES – CONT'D</u>

<u>Page</u>

### <u>CASES</u>

*Riley v. Am. Family Mut. Ins. Co.*,
    881 F.2d 368 (7th Cir. 1989) ............................................................ 11

*Samson Sales, Inc. v. Honeywell, Inc.* (1984),
    12 Ohio St. 3d 27................................................................................ 12

*Shallenberger v. Motorist Mut. Ins. Co.* (1958)
    167 Ohio St. 494................................................................................ 11

*Strand v. Garden Valley Tel. Co.*,
    51 F. Supp. 898 (D. Minn. 1943) ...................................................... 16

*Taylor Bldg. Corp. of Am. V. Benefield* (2008),
    117 Ohio St. 3d 351 ............................................................................ 3

*Tremco, Inc. v. Kent* (Cuy. App. 1997),
    1997 Ohio App. LEXIS 2367............................................................. 14

*U.S. v. Allegheny-Ludlum Indus., Inc.*,
    517 F.2d 826 (5th Cir. 1975) .................................................... 17, 19

*Walling v. Portland Terminal Co.*, 330 U.S. 148,
    67 S.Ct. 639 (1949) ........................................................................... 16

*Walton v. United Consumers Club, Inc.*,
    786 F.2d 303 (7th Cir. 1986) ............................................. 20, 21, 22

*Watson v. Mobile Oil Corp.*, 132 F.3d 37 (7th Cir. 1997)................ 21

*Yockey v. Horn*, 880 F.2d 945 (7th Cir. 1989) ................................... 2

### <u>STATUTES</u>

29 U.S.C. § 16(c) ................................................................................ 20

29 U.S.C. § 16(b) ................................................................................ 15

29 U.S.C. §§ 201 *et seq.*................................................................ 1, 14, 19

29 U.S.C. § 211(a) .............................................................................. 20

29 U.S.C. § 215(a)(3) ............................................................................ 1

## TABLE OF AUTHORITIES – CONT'D

**Page**

### STATUTES

29 U.S.C. § 216(b) ................................................................................ 14, 15

29 U.S.C. § 216(c) ...................................................................................... 19

29 U.S.C. § 251 ........................................................................................... 17

29 U.S.C. § 253 .............................................................. 14, 17, 18, 19, 20

29 U.S.C. § 253(a) ..................................................................................... 18

29 U.S.C. § 255(a) ..................................................................................... 25

29 U.S.C. §§ 621 *et seq.* ...................................................................... 7, 21

29 U.S.C. § 626(f). ....................................................................................... 7

29 U.S.C. § 626(f)(1). ................................................................................ 22

29 U.S.C. §§ 2601 *et seq* ........................................................................ 21

Fed. R. Civ. P. 56 ............................................................................... 1, 2, 3

Wis. Admin. Code § DWD 274.04 ........................................................... 23

Wis. Admin. Code § DWD 274.05 ........................................................... 24

Wis. Stat. §§ 103 *et seq* ..................................................................... 1, 23

Wis. Stat. §§ 104.01 *et seq* ............................................................. 22, 23

Wis. Stat. §§ 104.001(1), (5) ................................................................... 23

Wis. Stat. §§ 109 *et seq* ........................................................................... 1

Wis. Stat. § 111.322 ............................................................................... 1, 6

### MISCELLANEOUS

H.R. 71 80th Cong., 1st Sess., *reprinted* 1947
      U.S. Code Cong. Serv. 1029 ........................................................... 17

H.R. 584 80th Cong., 1st Sess. (1947) ............................................... 17

## <u>TABLE OF AUTHORITIES – CONT'D</u>

<u>Page</u>

<u>MISCELLANEOUS</u>

H.R. 2157 93rd Cong. Red. 1489 (1947) ................................................................. 17, 18

93rd Cong. Rec. 2196 (1947) ......................................................................................... 17

*LBE Recent Cases*, 14 Geo. Wash. L. Rev. 377 (1946) ................................................ 16

Marc Linder, *Class Struggle at the Door The Origins of
the Portal-to-Portal Act of 1947*, 39 Buff. L. Rev. 53 (1991) ......................... 17, 18

S. Rep. No. 103-3, at 35 (1993), *reprinted in*
1993 U.S.C.C.A.N. 3 ...................................................................................... 21

S. Rep. No. 640, 81st Cong., 1st Sess.,
*reprinted in* 1949 U.S. Cong. Serv. 2241 ........................................................ 19

## I.   __INTRODUCTION.__

Ignoring the multiple breaches of the Release and Severance Agreement that Plaintiff has already committed, and continues to commit through the commencement and pursuit of her Original, First Amended, and Second Amended Complaints,[1] Plaintiff's Rule 56 petition asks this Court to determine, as a matter of law, that genuinely disputed overtime wage claims can *never* be privately compromised under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* or Wis. Stat. §§ 103 *et seq.* or §§ 109 *et seq.*[2]   The Court, however, need not referee the legal debate identified by Plaintiff.  The Release and Severance Agreement that Plaintiff negotiated, signed, and had approved through her chosen legal counsel expressly prohibited the ". . . reinstating or instituting [of] any legal or administrative proceedings against the Released Parties in violation of any provision of this Agreement" and also unequivocally stated "any and all facts, circumstances and events occurring prior to the signing of this Agreement cannot be used by Employee as part of any future proceeding against the Released Parties."[3]

---

[1] Just by way of example, Plaintiff's First Amended Complaint plead and pursued retaliation causes of action under both the federal FLSA and Wis. Stat. § 111.322.  "The plain language of the [FLSA] statute compels the conclusion that retaliation claims, like the one asserted in this case, may be released without Department of Labor supervision or approval."  *Dorner v. Polsinelli, White, Bardeman & Shalton*, 656 F. Supp. 1483, 1488 (D. Kan. 1994).  By "instituting" such retaliation claims, the Release and Severance Agreement was clearly breached.  Similarly, Plaintiff plead in her First Amended, and Second Amended Complaints: "Because of Defendant's threat to deprive Plaintiff of the severance money, and the fact that Plaintiff was currently unemployed and not in a financial position to refuse the terms of the severance, Plaintiff felt she had no choice but to sign the agreement and relinquish her pursuit of the labor standards complaint at that time.  Indeed, Plaintiff reluctantly signed the severance agreement on August 2, 2007" (Def. Supp. PFF No. 62).  This too was a breach: "Any and all facts, circumstances and events occurring prior to the signing of this Agreement cannot be used by Employee as part of any future proceeding against the Released Parties"  (Pl. PFF No. 3, Exh. "A," p. 4).

[2] Pl. MSJ Br. pp. 4-7.  But see, *EEOC v. Astra USA, Inc.*, 94 F.3d 738, 744 (1st Cir. 1996) ("[P]ublic policy strongly favors encouraging voluntary settlement").

[3] Pl. PFF No. 3, Exh. "A," pp. 4, 6.

Because the pleadings and amended pleadings that Plaintiff has filed and pursued in this Court and elsewhere so clearly breached the Release and Severance Agreement in multiple respects, notwithstanding Plaintiff's pursuit of her overtime wage claims,[4] her Fed. R. Civ. P. 56 application should be denied.

## II.   LAW AND ARGUMENT.

### A.   The Rule 56 Analytical Framework.

The "interpretation of an unambiguous contract is a question of law." *Bechtold v. Phys. Health Plan of N. Ind., Inc.*, 19 F.3d 322, 325 (7th Cir. 1994). *Accord*, *Alexander v. Buckeye Pipeline Co.* (1978), 53 Ohio St. 2d 241, *syllabus* ¶ 1. "[I]t is only when the relevant contract language is ambiguous that the job of interpretation is turned over to a factfinder . . . and the determination of whether a contract is ambiguous is made as a matter of law by the court." *Astor v. IBM*, 7 F.3d 533, 539-540 (6th Cir. 1993) (applying Ohio law).[5]   Whether conduct falls within the ambit and reach of a Release and Severance Agreement is similarly an issue of pure law. *Yockey v. Horn*, 880 F.2d 945, 949, n.6 (7th Cir. 1989).

### B.   Plaintiff's Release and Severance Agreement is Not Void.

Out of the box, Plaintiff posits: "The Release and Severance Agreement is void as it violates the public policy" (Pl. MSJ Br. p. 4). Plaintiff's sweeping assumption in this regard is inextricably linked with her proposition that "private settlement of minimum wage and overtime claims are void – and have been for over 60 years" (*Id.* at p. 2). *But*

---

[4] Plaintiff's supporting brief misinforms the Court when it states: "Here, Alsco is alleging in its counterclaim, that Blakley has breached the Release and Severance Agreement by filing Civil Action 3:08-CV-00214 in the Western District of Wisconsin seeking unpaid wages and unpaid overtime under the FLSA and Wisconsin's wage payment laws" (Pl. MSJ Br. p. 4). Alsco's counterclaims are much more sweeping than as represented by Plaintiff (Def. Supp. PFF No. 73).

[5] Plaintiff's Release and Severance Agreement states that it will be interpreted and enforced by Ohio law (Pl. PFF No. 3, Exh. "A," p. 6).

*see*, *Martinez v. Bohls Bearing Equipt. Co*., 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) ("The parties may reach private compromises as to FLSA claims where there is a *bona fide* dispute as to the amount of hours worked or compensation due").

In order to deny Plaintiff's Rule 56 application, this Court need not resolve the claimed inability to privately resolve and waive overtime wage claims, where there is a dispute about the genuineness of those claims.  At this juncture, it is important for the Court to understand that even assuming, *arguendo*, that overtime wage claims are never, under any circumstances subject to private compromise, that would not leave the remainder of Plaintiff's Release and Severance Agreement as being "void."  Notably, Plaintiff's Release and Severance Agreement contained a severability proviso, to wit:

> Should it be held at any time by a court of competent jurisdiction that any of the obligations, covenants or agreements set forth in this Agreement are illegal, invalid, or unenforceable, the validity of the remaining parts, terms, or provisions shall not be affected thereby and any illegal, invalid or unenforceable parts, terms or provisions shall be deemed not to be a part of this Agreement.

(Pl. PFF No. 3, Exh. "A," p. 6, ¶ 15).  Ohio courts routinely and jealously enforce privately bargained contractual severability provisions.[6]  *Taylor Bldg. Corp. of Am. v. Benefield* (2008), 117 Ohio St. 3d 352, ¶ 8; *Ignazio v. Clear Channel Broad. Co.* (2007), 113 Ohio St. 3d 276, ¶ 2.

Since the entirety of Plaintiff's Release and Severance Agreement is not "void," it is necessary to now parse through the Original, First Amended, and Second Amended Complaints initiated and pursued by Plaintiff to determine whether breaches have occurred.

---

[6] The only authority cited by Plaintiff – *Marsh v. Lampert* (Butler App. 1998), 129 Ohio App. 3d 685, 687 – is uninstructive.  There was no negotiated or agreed-upon severability proviso in *Marsh*.

**C.    Plaintiff's Multiple and Continued**
**Breaches of Her Release and Severance Agreement.**

"'Breach' as applied to contracts is defined as failure without legal excuse to perform any promise which forms a whole or part of a contract, including the refusal of a party to recognize the existence of a contract or the doing of something inconsistent with its existence." *Hanna v. Groom* (Franklin App. 2008), 2008-Ohio-765, ¶ 14.  (citing, *NCB v. Erskine & Sons, Inc.* (1953), 158 Ohio St. 450, 461).

Plaintiff's Release and Severance Agreement unambiguously stated:

> **B.**    This Agreement is intended to fully and finally resolve any and all claims and disputes, known and unknown, that exist or might be claimed to exist by Employee against Alsco . . . including but not limited to, claims of any nature that have been, or could have been, asserted that arise out of or relate to Employee's employment, terms and conditions of employment, termination from that employment, *or any other event, transaction or communication between Employee and the Released Parties.*
>
> * * *
>
> **6.    Complete Release.**  It is the specific intent and purpose of this Agreement to release and discharge the Company from liability for any and all claims, employment discrimination charges, and causes of action of any kind or nature whatsoever, whether known or unknown, and whether specifically mentioned or not, which may exist or might be claimed to exist at or prior to the date hereof, and Employee specifically waives any claim or right to assert that any cause of action or alleged cause of action or charge has been, through oversight or error, intentionally or unintentionally, omitted from this Agreement.
>
> Employee expressly agrees that this Agreement will extend and apply to all unknown, unsuspected and unanticipated injuries and damages as well as those that are now disclosed.  *Any and all facts, circumstances and events occurring prior to the signing of this Agreement cannot be used by employees as part of any future proceeding against the Released Parties.*

(Pl. PFF No. 3, Exh. "A," pp. 1, 4) (emphasis added).  Moreover, the parties expressly defined an actionable "breach" as, *inter alia*, ". . . including (but not limited to) reinstating

or instituting any legal or administrative proceeding against the Released Parties in violation of any provision of this Agreement" (*Id.* at p. 6).

As demonstrated *infra*, these exacting, unambiguous clauses and provisions were breached, and continue to be breached by Plaintiff in this action in ways that have nothing whatsoever to do with her underlying overtime wage claims.

### 1.   Plaintiff's Wisconsin Retaliation Charge.

Before even filing or pursuing this suit, Plaintiff breached her Release and Severance Agreement by filing and pursuing an administrative charge of retaliation with the Wisconsin Department of Workforce Development (Def. Supp. PFF No. 61).  Ms. Blakley's administrative charge alleged that the simple act of asking/requiring her to execute a release agreement was "retaliatory," and detailed certain facts that occurred prior to her signing of her Release and Severance Agreement that she felt supported this retaliation allegation:

> 9.   Ms. Blakley was notified by Alsco's Human Resources Department that Ms. Blakley would not receive Ms. Blakley's severance package unless Ms. Blakley withdrew the aforementioned labor standards complaint Ms. Blakley filed with the Equal Rights Division.

> 10.   Because of Alsco's threat to deprive Ms. Blakley of the severance money and the fact that Ms. Blakley was currently unemployed and not in a financial position to refuse the terms of the severance, Ms. Blakley felt that she had no choice but to sign the agreement and relinquish any pursuit of the labor standards complaint at that time. Indeed, Ms. Blakley reluctantly signed the severance agreement on August 2, 2007.

(Def. Supp. PFF No. 61, p. 4).

Plaintiff's Wisconsin Workforce Development administrative charge violated no less than two separate provisions of her agreed-upon Release and Severance Agreement.   First, the text of the Release and Severance Agreement expressly

referenced "the Fair Labor Standards Act of 1938," "any similar state or local statutes or ordinances," and covered purported acts of "retaliation" (Pl. PFF No. 3, Exh. "A," p. 2). As noted *supra* at n.1, there is no question in the law but that FLSA (and by analogy Wisconsin-based claims) of retaliation are indeed subject to private waiver and compromise. *Dorner v. Polsinelli, White, Bardeman & Shalton*, 856 F. Supp. 1483, 1488 (D. Kan. 1994).   Second, Plaintiff used, and sought to use ". . . facts, circumstances and events occurring prior to the signing of this Agreement" as "part of any future proceeding against the Released Parties" (Pl. PFF No. 3, Exh. "A," p. 4; Def. Supp. PFF No. 61, p. 4).   Indeed, Plaintiff's pre-suit administrative charge on its face arose out of a ". . . event, transaction, or communication between Employee and the Released Parties," and therefore was fully released and waived under the explicit terms of Plaintiff's Release and Severance Agreement (Pl. PFF No. 3, Exh. "A," p. 1).

This event was Plaintiff's first, but certainly not last, breach.

## 2.   **Plaintiff's First Amended Complaint.**

By "instituting"[7] her First Amended Complaint, Plaintiff again breached her Release and Severance Agreement, once again in multiple fashions.   First, Plaintiff plead, advanced, and pursued legal retaliation claims against Alsco under both the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), and its Wisconsin state law equivalent, Wis. Stat. § 111.322 (Def. Supp. PFF Nos. 62, 63).   Additionally, to bolster her newly discovered twin allegations of retaliation, Plaintiff plead and used "facts, circumstances and events occurring prior to the signing of this [Release and Severance] Agreement"

---

[7] It is somewhat important to observe that the parties have negotiated that it is the mere "instituting" of any prohibited "legal or administrative proceedings against" Alsco that is deemed to be a breach of Plaintiff's Release and Severance Agreement (Pl. PFF No. 3, Exh. "A," p. 6).

against Alsco (Def. Supp. PFF No. 63).  This also was a stark violation of Plaintiff's contractual commitments.

Secondarily, Plaintiff specifically plead in her First Amended Complaint:

> 30.   Because of Defendant's threat to deprive Plaintiff of the severance money, and the fact that Plaintiff was currently unemployed and not in a financial position to refuse the terms of the severance, Plaintiff felt she had no choice but to sign the agreement and relinquish her pursuit of the labor standards complaint at that time.  Indeed, Plaintiff reluctantly signed the severance agreement on August 2, 2007.

(Def. Supp. PFF No. 62).  This plead claim of duress violated Plaintiff's Release and Severance Agreement in two different ways.   First, Plaintiff already contractually agreed:

> I, SHELLY BLAKLEY, EXPRESSLY ACKNOWLEDGE, REPRESENT AND WARRANT THAT I HAVE CAREFULLY REVIEWED THIS AGREEMENT;  THAT  I  FULLY  UNDERSTAND  THE  TERMS, CONDITIONS AND SIGNIFICANCE OF THIS AGREEMENT; THAT I HAVE HAD AMPLE TIME TO CONSIDER THIS AGREEMENT; THAT THE COMPANY HAS ADVISED ME IN WRITING TO CONSULT WITH AN ATTORNEY CONCERNING THIS AGREEMENT; THAT I HAVE HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH AN ATTORNEY AND HAVE DONE SO OR HAVE DECLINED TO DO SO; AND THAT I HAVE EXECUTED THIS AGREEMENT *KNOWINGLY, VOLUNTARILY*, AND WITH SUCH ADVICE FROM AN ATTORNEY AS I DEEMED APPROPRIATE.

(Pl. PFF No. 3, Exh. "A," p. 6) (emphasis added).[8]   Additionally, Plaintiff's "duress" averment  was  clearly  (and  impermissibly)  the  byproduct  of  "any  and  all  facts, circumstances and events occurring prior to the signing of this Agreement" (Pl. PFF No. 3, Exh. "A," p. 4).  Plaintiff committed, in unequivocal and unambiguous language, that

---

[8] Under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, Congress identified the terms and conditions that must be met in order for a "knowing and voluntary" release of federal age discrimination claims to occur.  *See*, 29 U.S.C. § 626(f) (codifying the Older Workers Benefit Protection Act).  Although there are no age discrimination implications with respect to Ms. Blakley, the Release and Severance Agreement that she signed with the advice and benefit of her legal counsel met all the strictures of a presumptive "knowing and voluntary" release.

she would not use such facts, circumstances and events ". . . as part of any future proceedings against the Released Parties" (*Id.*).

There is more.  Plaintiff's First Amended Complaint introduced a separate declaratory judgment count (Count V) that again clearly was a legally waiveable "claim" or "cause of action" (Def. Supp. PFF No. 6).  Also, a separate preliminary injunctive "claim" or "cause of action" was introduced into the First Amended Complaint (Count VI) (Def. Supp. PFF No. 63), and it was also proscribed by the release's text (Pl. PFF No. 3, Exh. "A," p. 2) (specifically listing "injunctive relief").

Thus, by "instituting" Plaintiff's First Amended Complaint, Plaintiff breached the Release and Severance Agreement in several different, and independent ways.

### 3.    The Second Amended Complaint.

Realizing the legal havoc wrought through Plaintiff's First Amended Complaint, Plaintiff's counsels scrambled at the eleventh hour to petition this Court to file a Second Amended Complaint wherein the FLSA and Wisconsin-based retaliation allegations were excised from the Complaint (Def. Supp. PFF Nos. 70-71).  This, however, did not undo the "breach" that had already been committed by Plaintiff, since it is the mere "instituting" of "any legal or administrative proceeding" against Alsco that is expressly proscribed (Pl. PFF No. 3, Exh. "A," p. 6).  Nevertheless, Plaintiff proceeded to again breach the Release and Severance Agreement when she filed her Second Amended Complaint, and again plead:

> 30.    Because of Defendant's threat to deprive Plaintiff of the severance money, and the fact that Plaintiff was currently unemployed and not in a financial position to refuse the terms of the severance, Plaintiff felt she had no choice but to sign the agreement and relinquish her pursuit of the labor standards complaint at that time.  Indeed, Plaintiff reluctantly signed the severance agreement on August 2, 2007.

8

(Def. Supp. PFF No. 62).   As noted *supra*, these purported "facts, circumstances and events" ran afoul of the clear, unambiguous text of Plaintiff's Release and Severance Agreement in multiple respects.   So did Plaintiff's continued pursuit of Declaratory Judgment and Preliminary Injunctive claims and causes of action (Def. Supp. PFF No. 72).  Thus, Plaintiff's breaches continue to this day.

4.   **Conclusion.**

Notwithstanding this Court's resolution about the permissibility of legally compromising genuinely disputed FLSA or Wisconsin overtime wage claims, Plaintiff has breached, and continues to breach the Release and Severance Agreement that she entered into with Alsco.   Plaintiff's Motion for Summary Judgment requesting that Defendant's counterclaims be ordered dismissed as a matter of law should therefore be denied.

D.   **Plaintiff's Penalty/Liquidated Damage**
     **Claim was Effectively Waived and Released.**

In an effort to have the Court rewrite her Release and Severance Agreement, and emancipate her from the agreed-upon damages remedy for a breach, Plaintiff implores the Court to "void" the requirements that she ". . . return to ALSCO: (i) the [$19,922.00] Severance Benefit, less $500" and "indemnify and hold the Released Parties harmless from any and all laws, costs, damage, or expense including . . . reasonable attorney's fee"[9] expended in defense of a breach (Pl. MSJ Br. pp. 9-10).  Keep in mind that the $19,922.00 remitted by Alsco to Plaintiff in consideration of the Release and Severance Agreement was money ". . . which Employee is not otherwise entitled to receive" (Pl. PFF No. 3, Exh. "A," p. 1).  However, the Court need not indulge

---

[9] Pl. PFF No. 3, Exh. "A," pp. 5-6.

in Plaintiff's niceties between Ohio penalty clauses and liquidated damage clauses. Plaintiff has clearly and expressly waived this lawyer-manufactured claim.

Certainly, Plaintiff's Release and Severance Agreement is a "communication . . . between Employee and Released Parties" (Pl. PFF No. 3, Exh. "A," p. 1). If not, then it most assuredly is a "transaction . . . between Employee and the Released Parties" (*Id*.). Accordingly, "any . . . dispute" over its text, terms, and provisions is "fully and finally resolve[d]" (*Id*.).

Certainly, Plaintiff's Release and Severance Agreement, and Plaintiff's newly-minted charge that the damages clause set forth therein is an unenforceable Ohio penalty rather than an enforceable damage proviso, is a ". . . controversy of every kind and description" that " . . . existed at or prior to the date of this Agreement" (Pl. PFF No. 3, Exh. "A," P. 2. It, therefore, has been "release[d]" (*Id*.).

Certainly, Plaintiff's new-found claim that the damage language she and her lawyer reviewed and approved in the Release and Severance Agreement is somehow void represents a "claim" ". . . arising from . . . her separation . . . employment . . . or any other event, transaction or communication between Employee and the Released Parties" (Pl. PFF No. 3, Exh. "A," p. 2). It, therefore, has been "waive[d], release[d], and discharge[d]" (*Id.* at p. 1).

Finally, and no less certainly, Plaintiff's newly-invented claim that the specific damages language embedded in her negotiated Release and Severance Agreement is void because it is a prohibited Ohio penalty is a ". . . fact, circumstance and event occurring prior to the signing of this Agreement" (Pl. PFF No. 3, Exh. "A," pp. 1, 2). It, therefore, is a "dispute" that has been "fully and finally resolve[d]" (*Id.* at p. 1). It also

has been " . . . settle[d], waive[d], release[d], and discharge[d]" (*Id.* at pp. 1-2).

Accordingly, the eleventh hour lawyer-crafted argument to extricate Plaintiff from her prior lawyer's handiwork should not even be entertained by this Court. *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 372 (7th Cir. 1989) ("This Court has similarly refused to allow a plaintiff to escape the consequences of a Title VII settlement entered into under the advice of plaintiff's chosen counsel . . .").

### E. Plaintiff's Indemnity/Defense Clause is Not a Prohibitive "Penalty" Clause.

To shed the agreed-upon consequences for breaching the Release and Severance Agreement, Plaintiff asks this Court to rewrite the parties' agreement by summarily declaring the indemnity and legal release clause "void" because it purportedly is a prohibited Ohio "penalty" (Pl. MSJ Br., pp. 9-10). Alsco will first address the contract's stated requirement that Plaintiff return (i.e. tender back) her receipted separation allowance and vacation pay, and then address the costs, expense, reasonable attorney's fees provision.

Under Alsco's written severance benefit plan, an employee's signing of a General Release was a condition precedent to their receiving Separation Allowance Benefits, or to receiving Separation Allowance Benefits in a lump sum fashion (Def. Supp. PFF No. 36, pp. 1-3). Where, as here, a contractual condition precedent is not fulfilled, Ohio law provides that the consideration provided under the contract must be returned. *Manhattan Life Ins. Co. v. Burke* (1903), 69 Ohio St. 294, 302-03; *Shallenberger v. Motorist Mut. Ins. Co.* (1958), 167 Ohio St. 494; *Picklesimer v. B&O Railroad* (1949), 151 Ohio St. 1. This established Ohio law flows naturally from Ohio's general rule that

the non-breaching party is entitled to the full benefit of its contractual bargain.  *Garofalo v. Chicago Title Ins. Co.* (Cuy. App. 1995), 104 Ohio App. 3d 95, 108.

Additionally, even if paragraph 14 is read as a mere stipulated damage clause by freely contracting parties, it is not an Ohio-proscribed "penalty."  Citing to *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St. 3d 27, Plaintiff argues that paragraph 14 of her negotiated, signed Release and Severance Agreement would not be enforced under Ohio law (Pl. MSJ Br., p. 9).  The only *Samson Sales* test relied upon by Plaintiff to advance her point is that damages suffered by Alsco as a result of her conceded breach or anticipated breach would not be "difficult of proof" (*Id.*).[10]  This Court, of course, must start with the presumption that Ohio seeks to hold contracting parties to their bargain.  *Lake Land Empl. Group of Akron, LLC v. Columber* (2004), 101 Ohio St. 3d 242, 248 ("It is still believed to be good policy to let people make their own bargains and their own valuations").  "The freedom to contract is a longstanding fundamental right, and we must tread lightly when discarding the benefits and responsibilities that accompany this freedom."  *Farris Disposal v. Leipply's Gasthaus* (Summit App. 2005), 2005-Ohio-6737, ¶ 23.  Where, as here, a former employee breaches their contractual commitment not to sue or bring other types of legal proceedings against a defendant-employer, that employer naturally suffers a number of indeterminable damages that are not certain or readily subject to certain proof.  If Alsco employees needed to help with the defense are forced to spend their time and energies assisting with defense of a

---

[10] *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St. 3d 27, set forth the tests for determining the difference between an enforceable liquidated damage clause and an unenforceable penalty clause, to wit: "If the damages would be (1) uncertain as to amount and difficult to prove, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof."  *Id.* at *syllabus*.  In her summary judgment brief, Plaintiff does not argue for the existence of factors 2 or 3 of the *Samson Sales* legal test.

lawsuit or other proceedings, rather than turning their attentions and focus to those business responsibilities that generate profits and earnings for the employer, the resulting loss and harm is indeterminable.  Indeed, in a reduction-in-force scenario such as that here, whether defense-aiding witnesses who have been released and separated will even be locatable or available is uncertain, as is the time and expense of having to track down such individuals and gain their interest, loyalty and cooperation.  A company in this Country forced to defend a lawsuit or other legal proceedings thus suffers a whole host of intangible damages, over and above simply having to retain and pay lawyers to defend the matter at hand.

Plaintiff's *ipsi dixit* that cost, expense, and attorney's fee provisos are somehow unenforceable under controlling Ohio jurisprudence is simply not a correct statement of the governing law.  Contracting parties are free to negotiate such fee-shifting provisions. *Nottingdale Homeowners Assn. v. Darby* (1987), 33 Ohio St. 3d 32, 36; *Goldfarb v. The Robb Report, Inc.* (1995), 101 Ohio App. 3d 134, 147; *Gaul v. Olympia Fitness Centers, Inc.*(1993), 88 Ohio App. 3d 310, 321-324; *Moore v. Dayton Power & Light* (1994), 99 Ohio App. 3d 138, 142.

Finally, Alsco would be remiss if it did not briefly address Plaintiff's claim that there existed an "inequity in the bargaining power" with respect to Plaintiff's Release and Severance Agreement.   The *undisputed* and *undeniable* fact is that Plaintiff bargained over her particular Release and Severance Agreement (Def. Supp. PFF Nos. 45-48).  Plaintiff even had a lawyer scrutinize the text of her Release and Severance Agreement, and advise her accordingly (Def. Supp. PFF No. 44).  There can be no credible claim of inequity in bargaining under such facts and circumstances.  *See*,

13

*Tremco, Inc. v. Kent* (Cuy. App. 1997), 1997 Ohio App. LEXIS 2367, ** 16-17.  In a word, it is frivolous to argue that Plaintiff experienced "inequity in bargaining power" where, in fact, she and her attorney successfully bargained over the Release and Severance Agreement before signing it.

> **F.     Contested Federal FLSA Overtime Claims are**
> **Subject to Private Compromise and Settlement.**

"In order to determine whether purely private compromises of claims under the FLSA involving *bona fide* disputes as to liability are prohibited or permitted, it is necessary to conduct a thorough examination of the FLSA, it's amendment by the Portal-to-Portal Act of 1947 and the Fair Labor Standards Amendments of 1949, and subsequent interpretive case law."  *Martinez v. Bohls Bearing Equipt. Co.*, 361 F. Supp. 2d 608, 618 (W.D. Tex. 2005).  When this thorough analysis is undertaken, the logical result is:

> [A]ccording to the language of the FLSA, its amendment by the Portal-to-Portal Act of 1947 and the Fair Labor Standards Amendments of 1949, and its interpretation in the case law, parties may reach private compromises as to FLSA claims where there is a *bona fide* dispute as to the amount of hours worked or compensation due.  A release of a party's rights under the FLSA is enforceable under such circumstances.

*Martinez v. Bohls Bearing Equipt. Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005).

> **1.     Pre-Portal-to-Portal Decisions.**

In *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895 (1945), the Supreme Court took up the issue as to whether FLSA claims for liquidated damages[11] could be privately settled and compromised *where there was no dispute as to coverage or liability*.  The *O'Neil* court framed the issue as " . . . *whether in the absence of a bona*

---

[11] Under the federal FLSA, workers may be entitled to petition for, and receive liquidated damages in the form of a doubling the amount of overtime due and owing where they demonstrate that a "willful" violation of the Act occurred.  29 U.S.C. § 216(b).

*fide dispute between the parties as to liability*, [the employee's] written waiver of his right to liquidated damages under § 16(b) barred a subsequent action to recover liquidated damages." *Id.* at 704.   In other words, there was no "*bona fide* dispute between employer and employee" that overtime violations under the FLSA had, in fact, occurred. *Id.* at 703.  Ultimately, the *O'Neil* court ruled that a cause of action under the Fair Labor Standards Act limited to liquidated damages could not be waived through a release under the facts and circumstances before the Court.  The *O'Neil* court took great pains to note the limits of its decision:  "Our decision . . . has not necessitated a determination of what limitation, if any, [§ 216(b)] places on the validity of agreements between an employer and employee to settle claims arising under the [FLSA] if the settlement is made as the result of a *bona fide* dispute between the parties, in consideration of a *bona fide* compromise and settlement."  *Id.* at 714.

In its next term, the Supreme Court addressed whether the release of liquidated damages under the FLSA could be valid where there was a *bona fide* dispute as to the employer's coverage under the Act.  *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925 (1946).  The employer in *Gangi* failed to remit overtime payments to its workers under the theory that it was not even covered by the Act.  *Id.* at 111-12.  Under the threat of suit by its employees, the employer paid the due and owing overtime compensation in full, and obtained a release from the employees as to the remainder of their FLSA rights.  *Id.*  Ultimately, the *Gangi* court ruled "the remedy of liquidated damages cannot be bargained away by *bona fide* settlements of disputes over coverage."  *Id.* at 114.  Once again, the *Gangi* court took great pains to point out the limitations of its decision-making:  "Nor do we need to consider here the possibility of

15

compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment." *Id.* at 114. Within *Gangi*, the Supreme Court cited, with approval, noted commentaries and judicial decisions that had approved of the private settlements of overtime claims where there was a genuine dispute as to on-the-merits liability.[12] Justices Frankfurter and Burton dissented from the *Gangi* majority's views: "Strict enforcement of the policy which puts beyond the pale of private arrangement, minimum standards of wages and hours fixed by law does not call for disregard of another policy, that of encouraging amicable settlement of honest differences between men dealing at arm's length with one another." *Id.* at 112 (Frankfurter, J. *dissenting*).

On the heels of *O'Neil* and *Gangi*, the federal courts were blitzed with FLSA suits. *See*, *Walling v. Portland Terminal Co.*, 330 U.S. 148, 155, 67 S.Ct. 639 (1949) (Jackson, J. *concurring*) ("No kind of agreement between the parties in interest settling borderline cases in a way satisfactory to themselves, however fairly arrived at, is today worth the paper it is written on. Interminable litigation, stimulated by a contingent reward to attorneys, is necessitated by the present state of the court's decisions").

In 1947, Congress acted.

## 2.    The 1947 Portal-to-Portal Act.

In 1947 Congress passed the Portal-to-Portal Act which, in its preamble, explicitly stated that it was prompted by "judicial [interpretation] in disregard of long-

---

[12] The *Gangi* court cited to *LBE Recent Cases*, 14 Geo. Wash. L. Rev. 377, 387 (1946) where the commentator stated: "Accord and satisfaction may be valid consideration for a release where the dispute is as to the amount due, but not where the dispute exists as to the legal interpretation of the Act as to coverage." *D.A. Schulte v. Gangi*, 328 U.S. 108, 116, n.13, 66 S.Ct. 925 (1946). The *Gangi* court also cited to *Strand v. Garden Valley Tel. Co.*, 51 F. Supp. 898, 905 (D. Minn. 1943), where a district court noted that if it had found a true and live dispute as to the number of hours worked by the employee in question, it may have upheld a settlement and release under the FLSA.

established customs, practices, and contracts between employers and employees."  29

U.S.C. § 251.  In addition to overturning other objectionable Supreme Court precedents,

the Portal-to-Portal Act was viewed as a direct response to the *O'Neil* and *Gangi*

rulings.  *See*, *U.S. v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 862 (5th Cir. 1975).

*See also*, *Martinez v. Bohls Bearing Equipt. Co.*, 361 F. Supp. 2d 608, 625 (W.D. Tex.

2005) ("The legislative history demonstrates that Congress reacted to the decisions in

*O'Neil* and *Gangi*, and *Mt. Clemens* with great animus").

House Bill 584 was introduced on January 7, 1947, H.R. 584 80th Cong., 1st

Sess. (1947), and by its terms permitted all FLSA claims to be "waived, compromised,

adjusted, settled, or released."  Marc Linder, *Class Struggle at the Door: The Origins of

the Portal-to-Portal Act of 1947*, 39 Buff. L. Rev. 53, 137 (1991).  After House Judiciary

Committee hearings, a separate bill, H.R. 2157, was prepared and reported to the

House.   93 Cong. Rec. 1489 (1947).    Again, that Bill expressly authorized the

"settle[ment] or release" of FLSA claims and "applied to settlement[s] both before and

after the effective date of this act."  H. Rep. No. 71, 80th Cong., 1st Sess., *reprinted* 1947

U.S. Code Cong. Serv. 1029, 1036.  H.R. 2157 passed on February 28, 1947.  The

House Bill was rather clear in its intent: "Some people may think that the House Bill

goes too far in permitting settlements in [the] future for all types of claims arising under

[the FLSA].  I do not think so, but in any event, the Senate provision is too narrow."

Statement of Senator Wherry, 93 Cong. Rec. 2196 (1947).

The Senate's Bill No. 70 was introduced in January 1947 and did not permit the

compromise or settlement of future (i.e., post-1947) overtime or minimum wage claims.

Marc Linder, *Class Struggle at the Door: The Origins of the Portal-to-Portal Act of 1947*,

39 Buff. L. Rev. 53, 148 (1991).  The Senate version of H.R. 2157 passed on March 21,

1947.

The House and Senate Bills were referred to a conference committee on March

25, 1947, and the Bill was reported out on April 29, 1947.  Portal-to-Portal Act of 1947,

H.R. Cong. Rep. No. 326, 80th Cong., 1st Sess. (1947).  The conference report shed

light on the treatment of future-arising FLSA claims:

> It will be noted that [section 3] of the conference agreement lays down no
> rule as to compromises or waivers with respect to causes of action
> hereafter accruing.  The validity or invalidity of such compromises or
> waivers is to be determined under the laws other than this section.

Portal-to-Portal Act of 1947, H.R. Cong. Rep. No. 326, 80th Cong., 1st Sess. No. 4, § 3

(1947) (codified at 29 U.S.C. § 253 (enacted May 14, 1947)).

The text of the Portal-to-Portal Act is not a model of Congressional clarity.  It " . . .

includes language that could be viewed as permitting compromises of all FLSA claims

involving *bona fide* disputes."  *Martinez v. Bohls Bearing Equipt. Co.*, 361 F. Supp. 2d

608, 623 (W.D. Tex. 2005).  Thus, the language itself provides:

> Any cause of action under the [FLSA] which accrued prior to May 14,
> 1947, or any action (whether instituted prior to or on or after May 14,
> 1947) to enforce such a cause of action, may hereafter be compromised in
> whole or in part, if there exists a *bona fide* dispute as to the amount
> payable by the employer to his employee; except that no such action or
> cause of action may be so compromised to the extent that such
> compromise is based on an hourly wage rate less than the minimum
> required under such Act, or on a payment for overtime at a rate less than
> one and one-half times such minimum hourly wage rate.

29 U.S.C. § 253(a) (1947).  Courts have noted:

> The language as to 'any action . . . to enforce such a cause of action' is
> ambiguous in that it could be read two different ways.  It could be read to
> apply only to actions filed after May 14, 1947 that seek to 'enforce' a
> cause of action under the FLSA that accrued prior to May 14, 1947, or it

could be read to 'enforce' any cause of action under the FLSA, whether filed before, on, or after May 14, 1947.

*Martinez v. Bohls Bearing Equipt. Co.*, 361 F. Supp. 2d 608, 623 (W.D. Tex. 2005).

> **3.    The Fair Labor Standards Act of 1949.**

No doubt owing to the arguably ambiguous language in section 3 as to the ability to compromise FLSA claims after 1947, the Portal-to-Portal Act did little to facilitate voluntary adjustments of FLSA disputes by employers and employees.  *See*, S. Rep. No. 640, 81st Cong., 1st Sess., *reprinted in* 1949 U.S. Cong. Serv. 2241, 2249. Congress acted once again in 1949 by passing the Fair Labor Standards Act of 1949, 63 Stat. 919 (1949).  The 1949 Act added § 16 providing that the Secretary of Labor:

> . . . is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under § 206 or § 207 of this Title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

29 U.S.C. § 216(c).

> **4.    Subsequent Judicial Interpretations.**

Whether Congress' vesting the Department of Labor with mere "authorizat[ion]" to supervise employer payments of unpaid minimum wages or unpaid overtime compensation was intended to be the *exclusive, final, and only* method to resolve genuine FLSA disputes has stirred great judicial debate.  The Fifth Circuit has ruled that the Portal-to-Portal Act was meant to overrule *O'Neil* and *Gangi* so as to allow purely private compromises and releases of FLSA disputes.  *U.S. v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 861 (5th Cir. 1975).  The Eleventh Circuit has held that once the Department of Labor has made an investigative finding as to overtime or minimum wage

violations,[13] at that point the only method of compromising and firmly and finally resolving an FLSA overtime or minimum wage claim is through the Department of Labor under § 16(c) of the Act.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).[14]  The Seventh Circuit has examined the compromise/release issue only in the context of where there has been a prior Department of Labor determination that FLSA violations have, in fact, occurred.  *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986).  Thus, the *Walton* Court considered the ability to compromise and release FLSA overtime claims only from the perspective of § 16(c) of the Act, and not its Portal-to-Portal provisions.  *Id.* at 305.  As the *Walton* Court noted, once the Department of Labor investigates and determines that overtime liability abounds: "The idea is that federal supervision replaces private bargaining, and that the right to receive full statutory wages and overtime is not to be extinguished without the assent of both employee and the Secretary [of Labor]."  *Id.* at p. 306.

The most recent federal case to examine the FLSA compromise and waiver issue outside of the Department of Labor setting, and to have considered the ante-dating Supreme Court decisions of *O'Neil* and *Gangi*, coupled with the 1947 and 1949 FLSA amendments, has concluded that as long as their exists a "*bona fide* dispute as to liability," " . . . a proper release signed by plaintiff waiving his rights under the FLSA in exchange for the settlement payment would be valid and enforceable."  *Martinez v. Bohls Bearing Equipt. Co.*, 361 F. Supp. 2d 608, 632 (W.D. Tex. 2005).

---

[13] The 1949 Act gave the Department of Labor the power and authority to investigate administrative complaints of alleged FLSA violations.  29 U.S.C. § 211(a).

[14] It is worth noting that in *Lynn's Food Stores*, the employer unsuccessfully attempted to negotiate a settlement with the Department of Labor, and then approached its affected employees and offered them ten cents on the dollar of total liability that the DOL determined to be actually due and owing.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1352.

This Court should follow *Martinez*.  Plaintiff had a lawyer involved when she debated and considered releasing her FLSA claims against Alsco (Def. Supp. PFF No. 44).  *See*, *Lynn's Food Stores, Inc. v. U.S. Dep't. of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("There is no evidence that any of the employees consulted with an attorney before signing the agreements").  Plaintiff and her counsel successfully negotiated over the text of her revised Release and Severance Agreement (Def. Supp. PFF Nos. 45 – 48), and left in tact those provisions expressly waiving her rights under the FLSA (*Id.*).

Further, his dispute does not involve any administrative pre-determination of overtime liability by the U.S. DOL, as was the case in both *Lynn's Food Stores* and *Walton*.

Finally, comparable federal employee protection laws are unquestionably subject to private compromise and release.  *Lloyd v. Brunswick Corp.*, 180 F.3d 893, 895 (7th Cir. 1999) (confirming that "employees are free to waive their ADEA rights" and that such waivers are enforceable); *Watson v. Mobile Oil Corp.*, 132 F.3d 37 (7th Cir. 1997) ("It is well established that a plaintiff may waive his claims under Title VII via a settlement agreement").  Both the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* and the federal Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*, were patterned after the FLSA in terms of their enforcement mechanisms.  S. Rep. 103-3, at 35 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 37 (stating that FMLA's "enforcement scheme is modeled on the enforcement scheme of the FLSA"); *Walton v. United Consumers Club*, 786 F.2d 303, 308 (7th Cir. 1986) ("Section 7(b) of the ADEA incorporates much of the enforcement apparatus of the FLSA").  Both the ADEA and FMLA allow for the private compromise and settlement of claims arising

21

under those federal enactments.  The ADEA expressly authorizes the "knowing and voluntary" waiver of claims arising under it.  *See*, 29 U.S.C. § 626(f)(1).  The FMLA also allows for private compromise and release.  *Butler v. Merrill Lynch Bus. Fin. Srvc.*, 08 C 0834, Dkt. #22 F. Supp. 2d. ___ (N.D. Ill., Aug. 14, 2008) (FMLA claims may be validly waived and released); *Faris v. William WPC-I, Inc.*, 332 F.3d 316, 320-21 (5th Cir. 2003) (same).

Plaintiff's knowing, conscious, negotiated, lawyer-assisted decision to compromise and release her disputed FLSA overtime claim should, accordingly, be enforced by this Court.

### G.    Contested Wisconsin Overtime Claims are Subject to Private Compromise and Settlement.

Without referencing any Wisconsin statutory text,[15] and mis-citing to Wisconsin *minimum wage* statutory text that is wholly inapplicable here,[16] Plaintiff asks the Court to legally " . . . hold that any waiver of Wisconsin wage claims is . . . void" (Pl. MSJ Br., p. 7).  As we shall see, Wisconsin's statutory text is materially different from that of the federal FLSA, and the Wisconsin Department of Workforce Development has issued interpretive regulations that are markedly different from those of the FLSA.

The starting point for divining the meaning of any law is, of course, the statutory

---

[15] Even those federal courts which have determined that *uncontested* FLSA-based claims are not subject to private waiver or compromise have done so only on the basis of examining the detailed, statutory text of the federal FLSA.  *Lynn's Food Stores, Inc. v. Dep't. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *Walton v. United Consumers Club*, 786 F.2d 303, 306-07 (7th Cir. 1986).

[16] Wis. Stat. §§ 104.01 *et seq.* are the state's provisions that speak to minimum wage – not overtime – obligations.  Thus, the portions of statutory text cited in Plaintiff's opposition brief (Pl. MSJ Br., p. 7) are neither relevant nor controlling for the issue now before this Court relating to overtime obligations. Indeed, it can be logically argued that since the Wisconsin legislature placed the "statewide concern" verbiage in the minimum wage provisions of its laws, and *not* in its overtime provisions, that one should conclude that no "statewide concern" exists with respect to overtime payments in the state of Wisconsin.

language itself.  *German v. Wisconsin DOT*, 223 Wis. 2d 525, 536-37, 612 N.W.2d 50,

656-57 (Ct. App. 1998), (*aff'd.*, 2000 WI 62, 235 Wis. 2d 576, 612 N.W.2d 50).  So it is

somewhat odd that Plaintiff's Motion for Summary Judgment cites no statutory text from

the overtime provisions of Wisconsin's state laws, Wis. Stat. §§ 103 *et seq.*  Instead, to

bolster her arguments, Plaintiff turns to the altogether different statutory text embedded

in Wisconsin's minimum wage statute, Wis. Stat. §§ 104.01 *et seq.* (Pl. MSJ Br., p. 7).[17]

Plaintiff then compounds her legal mis-citation by quoting a Wisconsin appellate

decision that implicated the white collar exemptions from Wisconsin's overtime wage

payment laws (Pl. MSJ Br. p. 6) (quoting, *Madely v. Radio Shack Corp.*, 2007 W.I. App.

244, ¶ 13 306 Wis. 2d 312, 742 N.W.2d 559).   Unlike Wisconsin's overtime wage

payment statute, the Wisconsin Department of Workforce Development has published

regulations expressly adopting the federal FLSA's case law and statute vis-à-vis the

white collar exemptions from overtime payments.  Wis. Admin. Code § DWD 274.04.  In

other words, it is only the white collar exemptions that have been expressly recognized

by the Department of Workforce Development as being interpreted " . . . in such a

manner as to be consistent with the federal Fair Labor Standards Act."  *Id.*  To suggest

otherwise to this Court, by clipping and pasting statutory and regulatory text out of

context is nothing short of misleading.

    In point of fact, guiding Wisconsin Department of Workforce Development

regulations tacitly suggests that Wisconsin's overtime statute does not simply parrot the

federal FLSA.    Thus, the Department of Workforce Development has expressly

---

[17] The statutory excerpts selectively quoted by Plaintiff to demonstrate Wisconsin's protection of *minimum wage* payments include "the legislation finds that the provision of a living wage that is uniform throughout the state is a matter of statewide concern" and "compensation for labor paid . . . sufficient to enable the employee receiving the compensation to maintain himself or herself under the conditions consistent with his or her welfare."  Wis. Stat. §§ 104.001(1), (5) (Pl. MSJ Br., p., 7).

permitted overtime wage payment requirements to be effectively waived by union/company labor negotiations. Wis. Admin. Code § DWD 274.05. Under the federal FLSA, however, a union cannot negotiate away an individual employee's overtime wage payment rights. *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740, 101 S.Ct. 1437 (1981).

Because the statutory text is not the same; because the quotations contained in Plaintiff's brief are taken completely out of proper context; and because the public policy of Wisconsin clearly favors the private resolution of disputes, this Court should hold that genuinely disputed overtime wage claims of an employee who is represented by legal counsel are indeed binding and fully enforceable in a court of law.

H.    **Plaintiff's Attack on Defendant's Affirmative Defenses.**

Based on the foregoing, and the supplementary uncontested facts, Plaintiff's request that Defendant's affirmative defenses be summarily dismissed must also be denied. Plaintiff's declaratory judgment, injunctive relief, duress/coercion claims all fail to state a claim or action upon which relief may be granted owing to the clear and explicit text of the Release and Severance Agreement. Similarly, to the extent Plaintiff seeks overtime wage liability (assuming, *arguendo*, that such is not subject to private compromise where there is a genuine dispute over such) may not reach back beyond April 15, 2006 – two years prior to Plaintiff's filing of this Complaint. 29 U.S.C. § 255(a). Thus, the affirmative defenses of failure to state as claim, statute of limitation, and waiver all remain applicable to claims and allegations that Plaintiff made, and continues to make.

Furthermore, Plaintiff cannot be told, and repeatedly told that she was not

permitted to work overtime hours without explicit authorization from management (Def. Supp. PFF Nos. 13, 14, 19, 27-32), and then surreptitiously complete handwritten or electronic written time records that fail to note or count for purported "overtime" that she worked "off-the-clock" (Def. Supp. PFF Nos. 15, 16, 17, 26).  The equitable doctrines of estoppel and unclean hands legally prevent Plaintiff from petitioning for the relief she seeks in this Court.  *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972).  Accordingly, the estoppel and unclean hands affirmative defenses remain valid and enforceable against Plaintiff.

## III.   CONCLUSION.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment must and should be denied.

Respectfully submitted,

*s/Keith L. Pryatel*

Keith L. Pryatel, Esq. (0034532)
kpryatel@kwwlaborlaw.com
John W. McKenzie, Esq. (0059266)
jmckenzie@kwwlaborlaw.com
Thomas Evan Green, Esq. (0075022)
tgreen@kwwlaborlaw.com
KASTNER WESTMAN & WILKINS, LLC
3480 West Market Street, Suite 300
Akron, OH 44333
330-867-9998 (Phone); 330-867-3786 (Fax)
Andrew M. Norman, Esq.

anorman@quarles.com
QUARLES & BRADY
33 East Main Street, Suite 900
Madison, WI  53703
608-283-2634 (Phone); 608-294-4974 (Fax)

Counsel for Defendant,
Alsco Metals Corporation

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2008, I caused to be served a true and correct copy of Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment via email through the Court's electronic filing system, on:

> Larry A. Johnson, Esq.
> Cross Law Firm S.C.
> 845 North 11th Street
> Milwaukee, WI  63233


> *s/Keith L. Pryatel*
> Keith L. Pryatel, Esq.